UNITED STATES BANKRUPTCY COURT      EASTERN DISTRICT OF WISCONSIN

IN THE MATTER OF:                          Case No. 19-21057 gmh

David Alpert and Pamela von Haden Alpert       Chapter 11

        Debtor(s)

---

JOSHUA KIRLEY                      Adv. Case No.

vs.

DAVID ALPERT and
PAMELA von HADEN ALPERT

---

### COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS UNDER 11 U.S.C. §§ 523(a)(2), (4), and (6)

---

Now comes Joshua Kirley ("Mr. Kirley" or "Plaintiff"), a creditor in the above-captioned case, and hereby alleges and avers as follows:

### JURISDICTION

1. This action arises out of and relates to the Chapter 11 case of David Alpert and Pamela von Haden Alpert, Case No. 19-21057 gmh on the docket of the U.S. Bankruptcy Court for the Eastern District of Wisconsin.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference from the District Court dated July 10, 1984.

3. Venue in this district is appropriate pursuant to 20 U.S.C. § 1409 by virtue of the underlying bankruptcy case pending in the same district.

4. This action is a proceeding to determine the dischargeability of a particular debt, and is, therefore, a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**Document prepared by**:
Ben Payne / Hanson & Payne, LLC
740 N. James Lovell St.
Milwaukee, Wisconsin 53233
(414) 217-4440 / bpayne@hansonpayne.com

5. If notwithstanding their designation as core proceedings in 28 U.S.C. § 157(b)(2), any claims raised in this action are only proceedings related to the Debtors' case under 28 U.S.C. § 157(c)(1), the plaintiff expressly consents to this Court making final determinations and entering judgments with respect to all such claims pursuant to 28 U.S.C. § 157(c)(2).

## PARTIES

6. Plaintiff is an individual, residing at 11000 Via Tuscany Ln., #301, Miromar Lakes, Florida 33913.

7. Defendants David Alpert and Pamela von Haden Alpert ("Mr. Alpert" and "Mrs. von Haden Alpert", respectively, collectively the "Defendants" or "Debtors"), are individuals, residing at 16440 Carrara Way, Unit 101, Naples, Florida 34110-3289.

## FACTUAL ALLEGATIONS

8. Plaintiff is a partially secured, partially unsecured creditor of the Debtors, owed roughly $1.85 million. The bases for his claim are set forth in detail in the proof of claim that he filed in this case (Claim No. 12 on the claims docket).

9. Mr. Kirley is the owner and holder of a promissory note from Mr. Alpert in the original principal amount of $1.3 million, a copy of which is attached hereto as **Exhibit A** (the "Note").

10. The Note is guaranteed by debtor Pamela von Haden Alpert, a copy of which guaranty is attached hereto as **Exhibit B** (the "Guaranty").

11. The Note is secured by a security agreement from debtor David Alpert, which granted Mr. Kirley a security interest in the collateral described therein (the "Personal Property"), a copy of which is attached hereto as **Exhibit C** (the "Security Agreement").

12. The Security Agreement was perfected by filing financing statements with the appropriate authorities in Wisconsin and Florida in 2016, copies of proof of perfection of which are attached hereto as **Exhibit D** (the "Kirley UCCs").

13. Other than a payment to extend the maturity date of the Note, the Debtors never made any payments on the Note, either before or after the Note matured.

14. On or about March 24, 2016, Mr. Kirley filed a complaint against the Debtors and others in Waukesha County Circuit Court, case number 16CV000589 (the "Collection Action"), requesting, among other relief, a judgment on the balance then due under the Note.

15. On January 24, 2017, the Court in the Collection Action entered an order for judgment and judgment in favor of Mr. Kirley and against the Debtors, in the original amount of $1,300,000.00, a copy of which order for judgment and judgment are attached hereto as **Exhibit E** (the "Order for Judgment" and "Judgment", respectively).

16. The Order for Judgment ordered the Debtors to turn over the Personal Property to be applied to the Judgment. *See* Exhibit E, Order for Judgment, at ¶¶ 5 and 6.

17. At the time the Order for Judgment was entered and continuing through the February 11, 2019 date of the Debtors' filing of this bankruptcy case, either the Debtors or a business entity of which they were an owner, were receiving monthly payments from a company known as Farm Journal or Farm Journal Media (the "Farm Journal Payments").

18. Upon information and belief, the Farm Journal Payments, or the proceeds thereof, were a type of property that the Debtors were required by the terms of the Order for Judgment to turn over to Mr. Kirley.

19. After entry of the Order for Judgment and Judgment, the Debtors did not turn over or otherwise deliver to Mr. Kirley, any part of the Farm Journal Payments.

20. Upon information and belief, either the Debtors, or one of the companies of which they are/were an owner, received the Farm Journal Payments after entry of the Order for Judgment and Judgment.

21. Upon information and belief, after entry of the Order for Judgment and Judgment, the Debtors used, or directed that one of their companies use, the Farm Journal Payments to support the Debtors' extravagant lifestyle and significant monthly personal expenses.

22. Subsequent to the Order for Judgment and Judgment, on June 19, 2017, the court in the Collection Action issued a separate Charging Order, attached hereto as **Exhibit F** (the "Charging Order"), specifically ordering all distributions and allocations from all companies owned by the Debtors, including Purposely, LLC, be delivered to Mr. Kirley to be applied to the Judgment.  *See* Exhibit F, Charging Order, at ¶¶ 3 and 4.

23. After entry of the Charging Order, the Debtors did not turn over or otherwise deliver the Farm Journal Payments, or any other monies derived from the operation of their various companies, to Mr. Kirley.

24. Subsequent to the Charging Order, on July 25, 2018, the court in the Collection Action (i) found the Debtors in contempt of the Order for Judgment and Charging Order, specifically finding that debtor David Alpert had "engaged in an active effort to shield his activities and income stream from the plaintiff's review despite specific orders by the Court to the contrary", (ii) granted the Mr. Kirley's motion for appointment of a receiver, and (iii) again ordered that the Personal Property be delivered to Mr. Kirley to be applied to the Judgment. *See* Decision and Order attached hereto as **Exhibit G** (the "Order Appointing Receiver"), at p. 14-16.

25. After entry of the Order Appointing Receiver, the Debtors did not turnover or otherwise deliver the Farm Journal Payments, or any other monies derived from the operation of their various companies, to Mr. Kirley.

26. Subsequent to the Order Appointing the Receiver, on January 2, 2019, the court in the Collection Action specifically ordered that the Farm Journal Payments to David Alpert or to Purpose Marketing Alliance, LLC were subject to the Order for Judgment, Charging Order, and the Order Appointing Receiver. *See* Order attached hereto as **Exhibit H** (the "January 2, 2019 Order"), at ¶¶ 3-8.

27. The Debtors have paid nothing on the Judgment and Mr. Kirley has received no money or property from or on behalf of the Debtors since entry of the Judgment.

### COUNT I: NON-DISCHARGEABILITY OF CLAIM UNDER 11 U.S.C. § 523(a)(2)(A)

28. Plaintiff re-alleges and incorporates by reference the allegations and statements contained in Paragraphs 1-27.

29. Upon information and belief, the Debtors deliberately and intentionally directed their companies to use monies that would have been subject to turnover to Mr. Kirley under the orders issued in the Collection Action, to pay the Debtors' personal expenses in an effort to circumvent the effect of such orders.

30. The Debtors' manipulation of the companies they owned to dodge their obligation to turn over distributions to which they were entitled from their companies constitutes actual fraud under § 523(a)(2)(A).

### COUNT II: NON-DISCHARGEABILITY OF CLAIM UNDER 11 U.S.C. § 523(a)(4)

31. Plaintiff re-alleges and incorporates by reference the allegations and statements contained in Paragraphs 1-30.

32. Upon entry of the orders in the Collection Action directing the Debtors to turn over the Personal Property, including the Farm Journal Payments, the Debtors were divested of their ownership interest in the Personal Property, including the Farm Journal Payments, which interests became the property of Mr. Kirley.

33. Upon entry of the orders in the Collection Action directing the Debtors to turn over the Personal Property, including the Farm Journal Payments, the Debtors became the fiduciaries of Mr. Kirley, imposing upon them the fiduciary duty to preserve the Personal Property for the benefit of Mr. Kirley.

34. Upon information and belief, the Debtors breached their fiduciary duty to Mr. Kirley by directing that the Personal Property be used for their own personal benefit, including for payment of their own lavish personal expenses.

35. The Debtors' use of the Personal Property, including the Farm Journal Payments, for their own personal benefit and in contravention of the orders issued in the Collection Action, constitutes theft of Mr. Kirley's property and/or breach of fiduciary duty under § 523(a)(4).

**COUNT III: NON-DISCHARGEABILITY OF CLAIM UNDER 11 U.S.C. § 523(a)(6)**

36. Plaintiff re-alleges and incorporates by reference the allegations and statements contained in Paragraphs 1-35.

37. The Debtors' use of the Personal Property, including the Farm Journal Payments, after entry of the orders entered in the Collection Action directing such property to Mr. Kirley was intentional.

38. Mr. Kirley was harmed by the Debtors' misuse of the Personal Property, including the Farm Journal Payments, to the extent that such misused property should have been applied to Mr. Kirley's Judgment.

39. The financial harm caused to Mr. Kirley by the Debtors' misuse of the Personal Property, including the Farm Journal Payments, was foreseeable and reasonably certain to result from the Debtors' misuse of such property.

40. The Debtors' use of the Personal Property, including the Farm Journal Payments, for their own personal benefit and in contravention of the orders issued in the Collection Action, constitutes a willful and malicious injury to Mr. Kirley under § 523(a)(6).

Wherefore, Plaintiff respectfully requests that the Court enter an order (i) providing, pursuant to §§ 523(a)(2), (4), and (6), that the debt owed by the Debtors to Plaintiff that equals the value of the Personal Property misappropriated by the Debtors is not dischargeable or discharged; (ii) granting judgment against the Debtors in the amount determined to be the value of the Personal Property misappropriated by the Debtors; and (iii) granting Plaintiff its actual costs, fees, and disbursements, and granting any other relief the court deems equitable.

Dated this 20th day of May, 2019.

HANSON & PAYNE, LLC
Attorneys for Josh Kirley

/s/ Ben Payne
State Bar No. 1041478

Hanson & Payne, LLC
740 N. James Lovell St.
Milwaukee, Wisconsin 53233
(414) 217-4440 / bpayne@hansonpayne.com

THIS SECURED PROMISSORY NOTE ("NOTE") HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY APPLICABLE STATE SECURITIES LAWS AND HAS NOT BEEN RECOMMENDED, APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAVE ANY OF THESE AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS NOTE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS NOTE AND THE INDEBTEDNESS EVIDENCED HEREBY ARE SECURED BY CERTAIN COLLATERAL PROVIDED BY PAYOR (AS DEFINED BELOW) AS SET FORTH IN (A) THAT CERTAIN SECURITY AGREEMENT ("SECURITY AGREEMENT") DATED AS OF THE DATE HEREOF BY AND BETWEEN PAYOR AND HOLDER (AS DEFINED BELOW) AND (B) THAT CERTAIN GUARANTY ("GUARANTY") DATED AS OF THE DATE HEREOF BY PAMELA VON HADEN ALPERT, THE SPOUSE OF PAYOR ("PAMELA"), IN FAVOR OF HOLDER.

## SECURED PROMISSORY NOTE

$1,300,000                                                              June 30,  2015

FOR VALUE RECEIVED, David J. Alpert ("Payor") hereby promises to pay to the order of Joshua Kirley or his assigns ("Holder"), the principal amount of One Million Three Hundred Thousand Dollars and NO/100s ($1,300,000) (the "Principal Amount"), together with additional consideration and interest thereon calculated from  September 1, 2015 ("Interest"), in accordance with the provisions of this Note.

1.    Interest.

(a)    In lieu of Interest accruing from the initial disbursement through August 31, 2015, Payor hereby assigns and transfers certain membership interests equal to 10% of the current outstanding membership interests (100,000 units of 1,000,000 units presently outstanding) in Givgram LLC, a Wisconsin limited liability company, (which entity owns all intellectual property rights in the product and application now known as "GivGram") to Holder free and clear of all liens, security interests and encumbrances. Payor hereby agrees to execute and deliver such instruments of conveyance and transfer and take such other actions as Holder may request in order to contemplate the assignment and transfer contemplated hereby not less than seven days before the Maturity date. Additional units in Givgram have been promised, though not yet issued, to certain persons as follows: advisors and directors, 50,000 units; and, service providers and employees, 150,000 units. Holder's interest may be diluted further by the issuance of additional units, but any such dilution shall be proportionate to the dilution of Payor's interest.

(b)    From September 1, 2015 to and including the Maturity Date (as defined in Section 2(b)), Interest shall accrue at a rate equal to five percent per annum (the "Interest Rate") on the unpaid Principal Amount of this Note outstanding from time to time.

(c)    Any Principal Amount or Interest not paid when due shall bear Interest from the date when due at the Default Interest Rate. The "Default Interest Rate" shall mean eight percent per annum in excess of the Interest Rate.

{00042586 8}

Exhibit A 1

Agreement, "Affiliates" shall mean, with respect of any Person, any other Person that directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with the first Person.

6.  Remedies.

(a)  Upon an Event of Default, Holder shall have the option, without demand or notice, to declare the unpaid Principal Amount of this Note, together with all accrued Interest, at once due and payable to the extent permitted by law, and to exercise any and all other rights and remedies available at law or in equity, including any rights under the Security Agreement and the Guaranty.

(b)  The remedies of Holder, as provided herein and in the Security Agreement and the Guaranty, shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Holder, and may be exercised as often as occasion therefor shall arise. No act of omission or commission of Holder, including specifically any failure to exercise any right, remedy or recourse, shall be deemed to be a waiver or release of the same, such waiver or release to be effected only through a written document executed by Holder and then only to the extent specifically stated therein. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event. Anything to the contrary notwithstanding, whether in this note or otherwise, Holder's sole remedy as to Payor's interest in Givgram, LLC, in which interest Payor is granting Holder a security interest by the Security Agreement, shall be a charging order as to such interest.

7.  Costs and Attorneys' Fees.

After the occurrence and during the continuance of an Event of Default, Payor shall pay all costs of collection of every kind, including all reasonable attorneys' fees, court costs and expenses of every kind, incurred by Holder in connection with such collection whether or not any lawsuit is filed with respect thereto.

8.  Assignment; Replacement; Cancellation.

(a)  This Note may be freely transferred and assigned by Holder. Payor's right to transfer and assign his rights and obligations with respect to this Note shall be subject to the prior written consent of Holder, which may be withheld in Holder's sole and absolute discretion.

(b)  Upon receipt of evidence reasonably satisfactory to Payor of the loss, theft, destruction or mutilation of this Note and, in the case of any such loss, theft or destruction, upon receipt of an indemnity reasonably satisfactory to Payor, or, in the case of any such mutilation, upon the surrender of this Note to Payor, Payor shall execute and deliver, in lieu thereof, a new note representing the same rights represented by such lost, stolen, destroyed or mutilated Note and dated so that there will be no loss of Interest on such Note.

(c)  Immediately after all the Principal Amount and any accrued but unpaid Interest owed on this Note have been paid in full, this Note shall be automatically canceled, and Holder shall immediately surrender this Note to Payor for cancellation.

4

Exhibit A 2

9.      Payments.

All payments when made to Holder shall be paid in the lawful money of the United States of America in immediately available funds.

10.      Place of Payment; Notice.

Payments of the Principal Amount and Interest, and all notices, requests, demands and other communications (each of which shall be in writing), shall be delivered to the parties herein, as applicable, at the addresses set forth on the signature page.

11.      Business Days.

If any payment is due, or any time period for giving notice or taking action expires, on a day that is not a business day, the payment shall be due and payable on, and the time period shall automatically be extended to, the next business day immediately following, and Interest shall continue to accrue at the required rate hereunder until any such payment is made.

12.      Severability.

If any provision of this Note is held to be illegal, invalid or unenforceable under any present or future law, (a) such provision will be fully severable, (b) this Note will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof, and (c) the remaining provisions of this Note will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

13.      Waiver of Trial by Jury.

PAYOR KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS NOTE OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

14.      Entire Agreement.

This Note, the Security Agreement, the Release and Settlement Agreement and any Guaranty or other instruments executed in connection with the consummation of the transactions contemplated hereby contain the entire agreement among the parties with respect to the transactions contemplated hereby, and supersede all prior agreements, written or oral, with respect thereto.

15.      Waiver of Compliance.

Any failure of a party hereto to comply with any obligation, covenant, agreement or condition herein may be waived by the other party, by a written instrument signed by the party granting such waiver, but such waiver or failure to insist upon strict compliance with such obligation, covenant, agreement or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

5

{00042586 8}

Exhibit A 3

16.    <u>Governing Law.</u>

All issues and questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Illinois or any other jurisdiction) that would cause the application of the substantive laws of any jurisdiction other than the State of Illinois.

**Signature Page Follows**

{00042586 8}

Exhibit A 4

**IN WITNESS WHEREOF**, this Note has been executed as of the date first above written.

_____
David J. Alpert

Address for Notices:

603 N. THORNBUSH CR.
HARTLAND, WI 53029
_____

Holder Address for Notices:

Joshua Kirley
c/o Nicholas C. Zagotta
Roberts McGivney Zagotta LLC
55 W. Monroe Street
Suite 1700
Chicago, IL 60603

{00042586 8}

Exhibit A 5

# GUARANTY

THIS GUARANTY ("Guaranty") dated July 6, 2015,  is executed by Pamela von Haden Alpert ("Guarantor") to and for the benefit of Joshua Kirley, his successors and assigns (collectively, "Lender").

## RECITALS:

A.      David J. Alpert ("Borrower") has executed and delivered that certain Secured Promissory Note dated of even date herewith (the "Note"), pursuant to which Lender has agreed to extend a loan to Borrower in the principal amount of One Million Three Hundred Thousand and No/100 Dollars ($1,300,000)(the "Loan").

B.      Guarantor is the spouse of Borrower and will therefore has and/or will benefit from the Loan.

C.      As a condition to extending the Loan and as security for Borrower's obligations under the Note, Guarantor has agreed to (i) guaranty the performance and payment of all obligations of Borrower under the Note and (ii) execute and deliver that certain Security Agreement dated of even date herewith in favor of Lender (the "Security Agreement") to secure the obligations of Guarantor hereunder.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby agrees with Lender as follows:

## AGREEMENTS:

1.      Guaranty of Payment and Performance. Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Lender the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the Obligations. For purposes of this Guaranty, "Obligations" shall mean the due and punctual payment and performance of the Note when due and payable under the Note and the interest thereon and any and all other monies and amounts due or which may become due on or with respect to any of the foregoing, and the due and punctual performance and observance by Borrower of all other terms, covenants, agreements and conditions of the Note, in any case, whether according to the present terms thereof, at any earlier or accelerated date or dates pursuant to any extension of time or to any change in terms, covenants, agreements and conditions thereof now or at any time hereafter made or granted.

2.      Nature of Guaranty. This Guaranty is a present and continuing guaranty of payment and not of collectability, and Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower, or to enforce or resort to any collateral for the repayment of the Obligations or other rights or remedies pertaining thereto, before pursuing Guarantor for payment. If for any reason Borrower shall fail or be unable to pay, punctually and fully, any of the Obligations or an Event of Default occurs under the Note, Guarantor shall pay such Obligations to Lender in full immediately upon demand. One or more successive actions may be brought against Guarantor, as often as Lender deems advisable, until all the Obligations are paid and performed in full. Guarantor agrees that performance of the Obligations by Guarantor shall be a primary obligation, shall not be subject to any counterclaim, set-off, abatement, deferment or defense based upon any claim that Guarantor may have against Lender or Borrower, as the case may be, or any other guarantor of the Obligations or any other person or entity, and shall remain in full force and effect without regard to, and shall not be released, discharged or

Exhibit B

Case 19-02083-gmh     Doc 1     Filed 05/20/19     Page 13 of 56

affected in any way by, any circumstance or condition (whether or not Guarantor shall have any knowledge thereof), including:

      (a)     any lack of validity or enforceability of the Note or the Security Agreement;

      (b)     any termination, amendment, modification or other change in the Note or the Security Agreement;

      (c)     any failure of Lender to give notice of any default under this Guaranty, the Security Agreement or the Note;

      (d)     any waiver, compromise, release, settlement or extension of time of payment or performance or observance of any of the obligations or agreements contained in the Note or the Security Agreement;

      (e)     any action or inaction by Lender under or in respect of any of this Guaranty, the Security Agreement or the Note;

      (f)     any failure, lack of diligence, omission or delay on the part of Lender to perfect, enforce, assert or exercise any lien, security interest, right, power or remedy conferred on Lender in the Note or the Security Agreement, or any other action or inaction on the part of Lender;

      (g)     any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshalling of assets and liabilities or similar events or proceedings with respect to Borrower, Guarantor or any other guarantor of the Obligations, as applicable, or any of their respective property or creditors, or any action taken by any trustee or receiver or by any court in any such proceeding;

      (h)     any change in the relationship between Borrower, Guarantor or any other guarantor of the Obligations or any termination of any such relationship;

      (i)     any release or discharge by operation of law of Borrower, Guarantor or any other guarantor of the Obligations from any obligation or agreement contained in the Note or the Security Agreement; or

      (j)     any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing and whether foreseen or unforeseen, which otherwise might constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Borrower or Guarantor to the fullest extent permitted by law.

      3.    <u>Waivers</u>. Guarantor expressly and unconditionally waives (a) notice of any of the matters referred to in <u>Section 2</u> above, (b) all notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, to preserve intact any rights against Guarantor, including any demand, presentment and protest, proof of notice of nonpayment under the Note or any failure on the part of Guarantor or any other guarantor of the Obligations to perform or comply with any covenant, agreement, term or condition of the Note, (c) any right to the enforcement, assertion or exercise against Guarantor or any other guarantor of the Obligations or any right or remedy conferred under the Note, (d) any requirement of diligence on the part of any person or entity, (e) any requirement on the part of

Lender to exhaust any remedies or to mitigate the damages resulting from any default under the Note, (f) any notice of any sale, transfer or other disposition of any right, title or interest of Lender under the Note, (g) all rights in the property or estate of David or Guarantor, including any and all rights to that certain real property commonly known as 18300 Vicenza Way, Miromar Lakes, Florida, and (h) any and all rights arising under or related to Article X, Section 4(a) of the Florida Constitution or Section 732.401(1) of the Florida Statutes.

4. <u>Subordination</u>. Guarantor agrees that any and all present and future debts and obligations of Borrower to Guarantor are hereby subordinated to the claims of Lender and are hereby assigned by Guarantor to Lender as security for the Obligations and the obligations of Guarantor under this Guaranty.

5. <u>Subrogation Waiver</u>. Until the Obligations are paid in full and all periods under applicable bankruptcy law for the contest of any payment by Guarantor or Borrower as a preferential or fraudulent payment have expired, Guarantor knowingly, and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which Guarantor may now or hereafter have by and from Borrower and the successors and assigns of Borrower for any payments made by Guarantor to Lender, including any rights which might allow Borrower or Borrower's respective successors, a creditor of Borrower or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's respective successors and assigns to Lender was on behalf of or for the benefit of Guarantor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender.

6. <u>Reinstatement</u>. The obligations of Guarantor pursuant to this Guaranty shall continue to be effective or automatically be reinstated, as the case may be, if at any time payment of any of the Obligations or the obligations of Guarantor under this Guaranty is rescinded or otherwise must be restored or returned by Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Guarantor, Borrower or otherwise, all as though such payment had not been made.

7. <u>Enforcement Costs</u>. If: (a) this Guaranty is placed in the hands of one or more attorneys for collection or is collected through any legal proceeding; (b) one or more attorneys is retained to represent Lender in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under this Guaranty, or (c) one or more attorneys is retained to represent Lender in any other proceedings whatsoever in connection with this Guaranty, then Guarantor shall pay to Lender upon demand all fees, costs and expenses incurred by Lender in connection therewith, including reasonable attorneys' fees, court costs and filing fees, in addition to all other amounts due hereunder.

8. <u>Successors and Assigns; Liability</u>. This Guaranty shall inure to the benefit of Lender and Lender's successors and assigns. This Guaranty shall be binding on Guarantor and the successors and assigns of Guarantor. It is agreed that the liability of Guarantor hereunder is several and independent of any other guarantees or other obligations at any time in effect with respect to the Obligations or any part thereof and that the liability of Guarantor hereunder may be enforced regardless of the existence, validity, enforcement or non-enforcement of any such other guarantees or other obligations.

9. <u>No Waiver of Rights</u>. No delay or failure on the part of Lender to exercise any right, power or privilege under this Guaranty or the Note shall operate as a waiver thereof, and no single or partial exercise of any right, power or privilege shall preclude any other or further exercise thereof or the

Exhibit B

exercise of any other power or right, or be deemed to establish a custom or course of dealing or performance between the parties hereto. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law. No notice to or demand on Guarantor in any case shall entitle Guarantor to any other or further notice or demand in the same, similar or other circumstance.

10.    <u>Modification</u>. The terms of this Guaranty may be waived, discharged or terminated only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. No amendment, modification, waiver or other change of any of the terms of this Guaranty shall be effective without the prior written consent of Lender.

11.    <u>Joinder</u>. Any action to enforce this Guaranty may be brought against Guarantor without any reimbursement or joinder of Borrower or any other guarantor of the Obligations in such action.

12.    <u>Severability</u>. If any provision of this Guaranty is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Guarantor and Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Guaranty and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

13.    <u>Applicable Law</u>. This Guaranty is governed as to validity, interpretation, effect and in all other respects by laws and decisions of the State of Illinois[1].

14.    <u>Notices</u>. All notices, communications and waivers under this Guaranty shall be in writing and shall be (a) delivered in person, (b) mailed, postage prepaid, either by registered or certified mail, return receipt requested, or (c) by overnight express carrier, addressed to the address set forth on the signature page.

15.    <u>CONSENT TO JURISDICTION</u>. TO INDUCE LENDER TO ACCEPT THIS GUARANTY, GUARANTOR IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS GUARANTY WILL BE LITIGATED IN COURTS LOCATED IN COOK COUNTY, ILLINOIS, WAUKESHA COUNTY, WISCONSIN, OR LEE COUNTY, FLORIDA. GUARANTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN SAID COUNTIES, WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO GUARANTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

16.    <u>WAIVER OF DEFENSES</u>. OTHER THAN CLAIMS BASED UPON THE FAILURE OF LENDER TO ACT IN A COMMERCIALLY REASONABLE MANNER, GUARANTOR WAIVES EVERY PRESENT AND FUTURE DEFENSE (OTHER THAN THE DEFENSE OF PAYMENT IN FULL), CAUSE OF ACTION, COUNTERCLAIM OR SETOFF WHICH GUARANTOR MAY NOW HAVE OR HEREAFTER MAY HAVE TO ANY ACTION BY LENDER IN ENFORCING THIS GUARANTY.

---

[1] Venue is to be to determined

{00042606 4}

17.     WAIVER OF JURY TRIAL. GUARANTOR AND LENDER (BY ACCEPTANCE HEREOF), HAVING HAD THE OPPORTUNITY TO BE REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS GUARANTY OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. GUARANTOR AGREES THAT GUARANTOR WILL NOT ASSERT ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

18.     Electronic Signatures. Receipt of an executed signature page to this Guaranty by electronic transmission shall constitute effective delivery thereof.

Signature Page Follows

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date first above written.

_Pamela von Haden Alpert_
Pamela von Haden Alpert

Address: _603 N. Thornbush Circle_
_Hartland, WI_
_53029_

Witnesses: _[signature]_

Print Name: _David Alpert_

Print Name: _____

STATE OF _Wisconsin_ )
) SS.
COUNTY OF _Waukesha_ )

I HEREBY CERTIFY that on this _6_ day of _July_, 2015, before me personally appeared Pamela von Haden Alpert, to me known to be the same person who signed the foregoing instrument as her free act and deed for the use and purpose therein mentioned, and that the said instrument is the act and deed of her.

WITNESS my signature and official seal at _Hartland_ in the County of _Waukesha_ and State of _Wisconsin_ the day and year last aforesaid.

(NOTARY SEAL)

_[notary seal: NOTARY PUBLIC STATE OF WISCONSIN MARGRAF]_

_Deborah Margraf_
Notary Public _11/30/2018_

Lender address for notices:

Joshua Kirley
c/o Nicholas Zagotta
Roberts McGivney Zagotta LLC
55 W. Monroe Street
Suite 1700
Chicago IL 60603

{00042606 4}

SIGNATURE PAGE TO GUARANTY

## SECURITY AGREEMENT

This SECURITY AGREEMENT is executed on July 6 2015 (the "Effective Date"), by and between David J. Alpert, individually ("Debtor"), and Joshua Kirley, individually ("Secured Party").

### RECITALS:

A.      Debtor has executed and delivered that certain Secured Promissory Note dated the date hereof (the "Note"), pursuant to which Secured Party agreed to extend a loan to Debtor in the principal amount of One Million Three Hundred Thousand and No/100 Dollars ($1,300,000) (the "Loan") the receipt of which the Debtor acknowledges

B.      Secured Party has required, as a condition to extending the Loan, that Debtor grant to Secured Party a lien on and security interest in all of Debtor's assets, additions thereto, and substitutions therefor, as security for the payment of all amounts under the Note.

### AGREEMENT:

1.      Definitions.

(a)      The "Collateral" shall consist of all Debtor's assets, including the property and interests of Debtor set forth on Exhibit A whether now owned or existing or hereafter created, acquired or arising and wheresoever located.

(b)      This Security Agreement secures the following (collectively, the "Obligations"):

(i)      Debtor's obligations under the Note; and

(ii)      Debtor's obligations under this Security Agreement.

(c)      Any term used in the Uniform Commercial Code ("UCC") and not defined in this Security Agreement has the meaning given to the term in the UCC.

2.      Grant of Security Interest. Debtor hereby grants a security interest in the Collateral to Secured Party to secure the payment or performance of the Obligations.

3.      Perfection of Security Interest.

(a)      Debtor authorizes Secured Party to file a financing statement describing the Collateral.

(b)      Debtor shall have possession of the Collateral, except as expressly otherwise provided in this Security Agreement or as Secured Party chooses to perfect his security interest by possession in addition to the filing of a Financing Statement.

(c)      In the event Collateral is in the possession of a third party, Debtor will join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Secured Party.

{00042587 5}

Exhibit C

(d)     Debtor will cooperate with Secured Party in obtaining control with respect to Collateral consisting of Deposit Accounts.

4.     <u>Covenants and Rights Concerning Collateral</u>.

(a)     Secured Party may inspect the Collateral at any time upon reasonable notice.

(b)     The Collateral shall remain personal property at all times. Debtor shall not affix any of the Collateral to any real property in any manner which would change its nature from that of personal property to real property or to a fixture.

(c)     Debtor has the risk of loss of the Collateral.

(d)     Secured Party has no duty to collect any income accruing on the Collateral or to preserve any rights relating to the Collateral.

(e)     Secured Party does not authorize, and Debtor agrees not to, make any sales or leases of any of the Collateral or grant any other security interest in any of the Collateral.

5.     <u>Debtor's Representations and Warranties</u>. Debtor warrants and represents:

(a)     Debtor has rights in and the power to transfer the Collateral and his title to the Collateral is free of all claims, liens, security interests and restrictions on transfer or pledge except as created by this Security Agreement.

(b)     All Collateral consisting of Goods is located in the State of Wisconsin and Florida.

(c)     Debtor's address is 18300 Vicenza Way, Miromar Lakes FL 33913, and debtor also maintains property at 603 North Thornbush Circle, Hartland, Wisconsin 53029, .

6.     <u>Debtor's Covenants</u>. Until all the Obligations are paid in full, Debtor agrees that it will:

(a)     not, in one transaction or a series of related transactions, sell all or substantially all of his assets;

(b)     not change the state where he resides; and

(c)     not change his legal name without providing Secured Party with 30 days' prior written notice.

7.     <u>Events of Default</u>. The occurrence of any of the following shall, at the option of Secured Party, be an "<u>Event of Default</u>":

(a)     An Event of Default (as defined in the Note) occurs by Debtor under the Note;

(b)     Any default by Pamela Von Haden, an affiliate of Debtor, under that certain Guaranty dated as of even date herewith executed in favor of Secured Party;

(c)     Debtor's failure to comply with any of the provisions of this Security Agreement;

{00042587 5}                                    2

Exhibit C

(d)     Any representation or warranty in this Security Agreement is incorrect in any material respect as of the date such representation or warranty was made;

(e)     Transfer or disposition of any of the Collateral, except as expressly permitted by this Security Agreement;

(f)     Attachment, execution or levy on any of the Collateral to collect a judgment of $7,500 or more; or

(g)     Debtor voluntarily or involuntarily becoming subject to any proceeding under (i) the Bankruptcy Code or (ii) any similar remedy under state statutory or common law and, in the case of such involuntary proceeding, fails to have such proceeding dismissed within 60 days.

8.     <u>Default Costs</u>. In the event an Event of Default occurs, Debtor will pay to Secured Party all costs reasonably incurred by Secured Party for the purpose of enforcing his rights hereunder, including:

(a)     costs of foreclosure;

(b)     costs of obtaining money damages; and

(c)     reasonable fees for the services of attorneys employed by Secured Party for any purpose related to this Security Agreement or the Obligations, including consultation, drafting documents, sending notices or instituting, prosecuting or defending litigation or arbitration.

9.     <u>Remedies upon Default</u>.

(a)     Upon any Event of Default, Secured Party may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce or satisfy any Obligations then owing, whether by acceleration or otherwise.

(b)     Upon any Event of Default, Secured Party shall have the right to pursue any of the following remedies separately, successively or simultaneously:

(i)     File suit and obtain judgment and, in conjunction with any action, Secured Party may seek any ancillary remedies provided by law, including levy of attachment and garnishment.

(ii)     Take possession of any Collateral if not already in his possession without demand and without legal process. Upon Secured Party's demand, Debtor will assemble and make the Collateral available to Secured Party as it directs. Debtor grants to Secured Party the right, for this purpose, to enter into or on any premises where Collateral may be located.

(iii)     Without taking possession, sell, lease or otherwise dispose of the Collateral at public or private sale in accordance with the UCC.

10.     <u>Foreclosure Procedures</u>.

Exhibit C

(a)     No delay or omission by Secured Party to exercise any right or remedy accruing upon any Event of Default shall: (i) impair any right or remedy, (ii) waive any default or operate as an acquiescence to the Event of Default, or (iii) affect any subsequent default of the same or of a different nature.

(b)     Secured Party shall give Debtor such notice of any public or private sale as may be required by the UCC.

(c)     Secured Party has no obligation to clean up or otherwise prepare the Collateral for sale.

(d)     Secured Party has no obligation to attempt to satisfy the Obligations by collecting them from any other person liable for them and Secured Party may release, modify, or waive any collateral provided by any other person to secure any of the Obligations, all without affecting Secured Party's rights against Debtor. Debtor waives any right it may have to require Secured Party to pursue any third person for any of the Obligations.

(e)     Secured Party may comply with any applicable state or federal law requirements in connection with the disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

(f)     Secured Party may sell the Collateral without giving any warranties as to the Collateral. Secured Party may specifically disclaim any warranties of title or the like. This procedure will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

(g)     If Secured Party sells any of the Collateral upon credit, Debtor will be credited only with payments actually made by the purchaser, received by Secured Party and applied to the indebtedness of the purchaser. In the event the purchaser fails to pay for the Collateral, Secured Party may resell the Collateral and Debtor shall be credited with the proceeds of the sale.

(h)     In the event Secured Party purchases any of the Collateral being sold, Secured Party may pay for the Collateral by crediting some or all of the Obligations of Debtor.

11.     <u>Miscellaneous</u>.

(a)     This Security Agreement shall bind and shall inure to the benefit of the heirs, legatees, executors, administrators, successor and assigns of Secured Party and shall bind all persons who become bound as a debtor to this Security Agreement.

(b)     Secured Party does not consent to any assignment by Debtor except as expressly provided in this Security Agreement. Secured Party may assign his rights and interests under this Security Agreement. If an assignment is made, Debtor shall render performance under this Security Agreement to the assignee. Debtor waives and will not assert against any assignee any claims, defenses or set-offs which Debtor could assert against Secured Party except defenses which cannot be waived.

(c)     Should any provision of this Security Agreement be found to be void, invalid or unenforceable by a court or panel of arbitrators of competent jurisdiction, that finding shall only

Exhibit C

Case 19-02083-gmh     Doc 1     Filed 05/20/19     Page 22 of 56

affect the provisions found to be void, invalid or unenforceable and shall not affect the remaining provisions of this Security Agreement.

(d)     Any notices required by this Security Agreement shall be deemed to be delivered when delivered in accordance with the Note.

(e)     This Security Agreement is being executed and delivered and is intended to be performed in the State of Illinois and shall be construed and enforced in accordance with the substantive laws of the State of Illinois, except to the extent that the UCC provides for the application of the law of another state.

(f)     This Security Agreement and the Financing Statement are the entire agreement of Debtor and Secured Party concerning its subject matter. Any amendment to this Security Agreement must be made in writing and signed by both parties.

(g)     Any waiver of any provision of this Security Agreement by a party shall be valid only if set forth in an instrument in writing signed on behalf of such party.

(h)     Debtor agrees to execute any further documents, and to take any further actions, reasonably requested by Secured Party to evidence or perfect the security interest granted herein, to maintain the first priority of the security interests, or to effectuate the rights granted to Secured Party herein.

**[Signature page follows]**

Exhibit C

The parties have signed this Security Agreement effective as of the Effective Date.

DEBTOR:

_____
David J. Alpert

SECURED PARTY:

_____
Joshua Kinley

SIGNATURE PAGE TO SECURITY AGREEMENT

Exhibit C

## EXHIBIT A

(a)    Accounts (as defined in the UCC);

(b)    Commercial Tort Claims (as defined in the UCC);

(c)    Consumer Goods (as defined in the UCC);

(d)    Equipment (as defined in the UCC);

(e)    Fixtures (as defined in the UCC);

(f)    General Intangibles (as defined in the UCC);

(g)    Instruments (as defined in the UCC);

(h)    Intellectual property rights;

(i)    money (of every jurisdiction whatsoever); and

(j)    to the extent not included in the foregoing, all other personal property of any kind or description.

together with all books, records, writings, data bases, information and other property relating to, used or useful in connection with, or evidencing, embodying, incorporating or referring to any of the foregoing, all accessions to the foregoing and all substitutions, renewals, improvements and replacements of and additions to the foregoing, and all Proceeds, products, offspring, rents, issues, profits and returns of and from any of the foregoing; provided that, to the extent that the provisions of any lease or license of any Software or intellectual property expressly prohibit (which prohibition is enforceable under applicable law) any assignment thereof, and the grant of a security interest therein, Secured Party will not enforce his security interest in Debtor's rights under such lease or license (other than in respect of the Proceeds thereof) for so long as such prohibition continues, it being understood that upon request of Secured Party, Debtor shall in good faith use reasonable efforts to obtain consent for the creation of a security interest in favor of Secured Party (and to Secured Party's enforcement of such security interest) in S

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

*8d* *$20*
*2240*
*3/7*

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |

C. SEND ACKNOWLEDGMENT TO: *(Name and Address)*

> Dane County Title, LLC
> UCC/Corporate Division
> 901 S Whitney Way
> Madison WI, 53711
> UCC@danecountytitle.com·

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| **1b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **ALPERT** | **DAVID** | **J** | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **603 NORTH THORNBUSH CIRCLE** | **HARTLAND** | **WI** | **53029** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| **3b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **KIRLEY** | **JOSHUA** | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **11000 VIA TUSCANY LANE, UNIT 301** | **MIROMAR LAKES** | **FL** | **33913** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

ALL ASSETS OF DEBTOR AS FURTHER DESCRIBED IN THE SECURITY AGREEMENT DATED AS OF JULY 6, 2015.

**ALL PARTIES ARE NOTIFIED THAT PROCEEDS OF THE SALE OF ANY UNITS OF GIVGRAM LLC ARE TO BE CREDITED AGAINST THAT CERTAIN SECURED PROMISORRY NOTE DATED AS OF JUNE 30, 2015 AND SECURED BY THAT CERTAIN SECURITY AGREEMENT DATED AS OF JULY 6, 2015.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | being administered by a Decedent's Personal Representative |
| --- | --- |

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| --- | --- |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

| 7. ALTERNATIVE DESIGNATION (if applicable): | ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |
| --- | --- | --- | --- | --- | --- |

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE
# FINANCING STATEMENT FORM

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON |
|---|

**B. Email Address**

**C. SEND ACKNOWLEDGEMENT TO:**

Name     Patrick Keating, Roberts McGivney Zagotta LLC

Address  55 W. Monroe Street, Suite 1700

Address

City/State/Zip  Chicago, IL 60603

FLORIDA SECURED TRANSACTION REGISTRY

# FILED
2016 Mar 09 03:07 PM

****** 201606715885 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names**

| 1.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1.b INDIVIDUAL'S SURNAME<br>ALPERT | FIRST PERSONAL NAME<br>DAVID | ADDITIONAL NAME(S)/INITIAL(S)<br>J | SUFFIX |
| 1.c MAILING ADDRESS Line One<br>18300 VICENZA WAY | This space not available. | | |
| MAILING ADDRESS Line Two | CITY<br>MIROMAR LAKES | STATE<br>FL | POSTAL CODE<br>33913 | COUNTRY<br>USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names**

| 2.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2.c MAILING ADDRESS Line One | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 3.b INDIVIDUAL'S SURNAME<br>KIRLEY | FIRST PERSONAL NAME<br>JOSHUA | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3.c MAILING ADDRESS Line One<br>11000 VIA TUSCANY LANE, UNIT 301 | This space not available. | | |
| MAILING ADDRESS Line Two | CITY<br>MIROMAR LAKES | STATE<br>FL | POSTAL CODE<br>33913 | COUNTRY<br>USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL ASSETS OF DEBTOR AS FURTHER DESCRIBED IN THE SECURITY AGREEMENT DATED AS OF JULY 6, 2015.

**ALL PARTIES ARE NOTIFIED THAT PROCEEDS OF THE SALE OF ANY UNITS OF GIVGRAM LLC ARE TO BE CREDITED AGAINST THAT CERTAIN SECURED PROMISORRY NOTE DATED AS OF JUNE 30, 2015 AND SECURED BY THAT CERTAIN SECURITY AGREEMENT DATED AS OF JULY 6, 2015.

---

**5. ALTERNATE DESIGNATION (if applicable)**

| ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|
| ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

---

**FILED**
**01-24-2017**
**Clerk of Circuit Court**
**Waukesha County**

STATE OF WISCONSIN          CIRCUIT COURT          WAUKESHA COUNTY

---

JOSHUA KIRLEY

            Plaintiff,

v.

DAVID ALPERT,
PAMELA VON HADEN ALPERT and

  -and-

PURPOSLY LLC f/k/a
GIVGRAM, LLC,

            Defendants.

Case No. 16CV00589

Case Classification: 30301
Case Code: Money Judgment

---

### ORDER FOR JUDGMENT

---

    This matter having come before the Honorable Maria S. Lazar on August 31, 2016 and September 27, 2016, pursuant to Plaintiff Joshua Kirley's Motion for an Order Granting Judgment on the Pleadings; and consistent with this Court's grant of said motion in open court on September 27, 2016, the Court hereby enters the following recitals and orders a final, valid, conclusive, and enforceable judgment against certain Defendants concerning certain claims of Plaintiff's Complaint as described herein.

Exhibit E

IT IS HEREBY RECITED:

Plaintiff Joshua Kirley having appeared by Schmidt Rupke Tess-Mattner & Fox, S.C., by Attorney Stephen L. Fox; Defendant Purposly LLC having appeared by Kerkman & Dunn, by Attorney Joseph R. Cincotta; Defendant David Alpert having appeared pro se; and Defendant Pamela Von Haden Alpert having been properly served but nonetheless failing to appear; and

The Court, with authority over the subject matter, as well as jurisdiction over the parties and persons as stated above, with adequate and fair notice afforded to the parties prior to the pertinent hearings referenced herein, and the Court having considered the pleadings, proofs, and positions of the parties, and having reviewed and considered the letter objections to the form of the proposed Order for Judgment and the proposed Judgment, now therefore, for the reasons stated on the record September 27, 2016, taken after due deliberation;

**IT IS HEREBY ORDERED**:

1.    Plaintiff Joshua Kirley's Motion for an Order Granting Judgment on the Pleadings as to the First, Second and Third Claims for Relief in the Complaint is GRANTED.

2.    There is due and owing to Plaintiff Joshua Kirley as of September 27, 2016, from Defendants David Alpert and Pamela Von Haden Alpert, as a result of their default on the Note and Guaranty, as set forth in the Complaint on file herein and the parties' proofs, which are incorporated herein by reference, the following sums:

| | | |
|---|---|---|
| A. | Principal: | $1,300,000.00 |
| B. | Interest: | To be determined later. |
| C. | Costs, Expenses, and Attorneys' Fees pursuant to the terms of the Note, Guaranty and Security Agreement and in accordance with the Plaintiff's proofs: | To be determined later. |

- 2 -

Exhibit E

Pursuant to Paragraph 7 of the Note, costs of collection, including all reasonable attorneys' fees, court costs and expenses, shall be paid to Plaintiff. **In order to determine the reasonableness of the attorneys' fees, the Plaintiff must move the Court, attaching a copy of the billing statements, and a hearing shall be held after due notice to all parties.**

3.    Plaintiff Joshua Kirley is granted a final and conclusive Money Judgment against Defendants David Alpert and Pamela Von Haden Alpert, jointly and severally, in the amount of $1,300,000.00, representing the amount of principal associated with the Note. The plaintiff may apply for an award and/or the determination of awarded interest, costs, expenses, and attorneys' fees in future filings by motions or applications for amendments to the Judgment, and David J. Alpert and Pamela von Haden Alpert may respond to such future motions or applications.

4.    Plaintiff Joshua Kirley is granted a Judgment on his foreclosure of security interest claim for the sale of the Collateral, described in the Security Agreement as follows:

(a)    Accounts (as defined in the UCC);
(b)    Commercial Tort Claims (as defined in the UCC);
(c)    Consumer Goods (as defined in the UCC);
(d)    Equipment (as defined in the UCC);
(e)    Fixtures (as defined in the UCC);
(f)    General Intangibles (as defined in the UCC);
(g)    Instruments (as defined in the UCC);
(h)    Intellectual property rights;
(i)    money (of every jurisdiction whatsoever);
(j)    to the extent not including in the foregoing, all other personal property of any kind or description.

together with all books, records, writings, data bases, information and other property relating to, used or useful in connection with, or evidencing, embodying, incorporating or referring to any of the foregoing, all accessions to the foregoing and all substitutions, renewals, improvements and replacements of and additions to the foregoing, and all Proceeds, products, offspring, rents, issues, profits and returns of and from any of the foregoing; provided that, to the extent that the provisions of any lease or license of any Software or intellectual property expressly prohibit (which prohibition is enforceable under applicable law) any assignment

- 3 -

thereof, and the grant of security interest therein, Secured Party will not enforce his security interest in Debtor's rights under such lease or license (other than in respect of the Proceeds thereof) for so long as such prohibition continues, it being understood that upon request of Secured Party, Debtor shall in good faith use reasonable efforts to obtain consent for the creation of a security interest in favor of Secured Party (and to Secured Party's enforcement of such security interest).

5.     Plaintiff is entitled to immediate turnover and possession of the Collateral, including Collateral as may be recognized, including by proper registration, filing, docketing, or recording of this Judgment in other jurisdictions.

6.     Defendants David Alpert and Pamela Von Haden Alpert, and/or any person in possession of the Collateral is directed to return said property to Plaintiff immediately and that upon failing to do so, the Sheriff of Waukesha County or a private repossession company is authorized to then take the property from Defendants David Alpert or Pamela Von Haden Alpert or such other persons that are acting on behalf of Defendants David Alpert or Pamela Von Haden Alpert, in concert therewith, or under control of Defendants David Alpert or Pamela Van Haden Alpert, and to deliver possession of said property to Plaintiff.

7.     The Collateral, unless sooner redeemed, shall be sold at private auction by and under the direction of the Plaintiff Joshua Kirley and public notice of the time and place of such sale shall be given in the matter provided by law and by publication in a newspaper published in the County;

8.     That the Collateral shall be sold subject to taxes and assessments, general or special, and any prior liens and encumbrances of record, if any, and free and clear of all claim, right, or equity of redemption thereof, of all parties to this action, their heirs, successors and assigns, and all persons claiming under them, and that Defendants David Alpert and Pamela Von

Exhibit E

Haden Alpert be forever barred and foreclosed of any right, title, or interest in and to said Collateral.

9. That the interests of Defendants David Alpert and Pamela Von Haden Alpert and all persons claiming under them or claiming an interest in the Collateral are foreclosed.

10. After deducting the fees and expenses of sale, the proceeds shall first be applied to the amounts due the Plaintiff, with interest at the minimum rate prevailing immediately prior to the default on which foreclosure is based, and that the surplus, if any, shall be subject to the further Order of this Court.

11. That Defendants David Alpert and Pamela Von Haden Alpert and persons claiming under them are enjoined from committing waste or doing any act that may impair the value of Collateral during the pendency of this action and are forever barred and foreclosed of any right, title and interest in the Collateral.

12. Should a third party successfully bid on the Collateral and not make the necessary payment within the required period of time, such third party forfeits the ten percent (10%) down payment and the Collateral reverts to the next highest bidder.

13. That the Clerk of this Court will enter Judgment in the total amount of $1,300,000.00, as set forth herein. Any future award of interest, costs, expenses, or attorneys' fees hereunder shall not affect or otherwise delay Plaintiff's ability to enforce this Judgment, as described.

**Dated this 24th day of January, 2017**

           **BY THE COURT:**
           <u>Electronically signed by Maria S. Lazar</u>
           Maria S. Lazar, Judge

- 5 -

Exhibit E

STATE OF WISCONSIN          CIRCUIT COURT          WAUKESHA COUNTY

JOSHUA KIRLEY

        Plaintiff,

  -vs-

DAVID ALPERT,

PAMELA VON HADEN ALPERT,

PURPOSLY LLC f/k/a GIVGRAM, LLC,

ALPERT HOLDINGS, LLC,
f/k/a A&M HOLDINGS, LLC, and

FICTICIOUS DEFENDANTS,
A, B, and C, including real persons
and entity persons owned and/or managed by one
or more Defendants.

        Defendants.

Case No. 16-cv-589

Case Code: 30301
Case Classification:  Money Judgment

---

## CHARGING ORDER AGAINST WISCONSIN LIMITED LIABILITY COMPANY INTERESTS (PURSUANT TO WIS. STAT. § 183.0705)

---

WHEREAS, there is of record in this Court an unsatisfied judgment as follows:

Judgment Creditors:    Joshua Kirley

Judgment Debtors:     David Alpert
                  603 North Thornbush Circle
                  Hartland, WI 53029

                  Pamela Von Haden Alpert
                  603 North Thornbush Circle
                  Hartland, WI 53029

Date of Judgment:    January 24, 2017

Exhibit F

Judgment Balance Due: $1,300,000.00 (plus interest, including post-judgment interest, fees, and costs to be determined later and will be entered by separate order).

IT IS HEREBY ORDERED:

1. Pursuant to Wis. Stat. Ann. § 183.0705, the limited liability company interests of Judgment Debtors are charged with payment of the unsatisfied amount of the judgment. As a result, the Judgment Creditor is entitled to the rights of an assignee of those limited liability company interests. Pursuant to Wis. Stat. § 183.0704, those rights entitle the Judgment Creditor to receive "distributions and to share in the allocations of profits and losses to which the assignor would be entitled with respect to the assigned interest."

2. Accordingly, within ten (10) calendar days of entry of this Order, Judgment Debtors shall provide Judgment Creditor with the following: (i) a written list, under penalty of perjury, of all their respective Wisconsin limited liability company interests; (ii) a written list, under penalty of perjury, of their respective entitlement to any periodic or otherwise known distributions or profits pursuant to each of their interests since January 1, 2016 and in the future; (iii) a written list, under penalty of perjury of all monetary or investment accounts of any kind in either of Judgment Debtors names or in the names any of the Wisconsin limited liability company identified in (i) above, whether as a primary or other account holder; and (iv) their written acknowledgment, under penalty of perjury, that all those distributions and profits will be paid directly to the Judgment Creditor, c/o their counsel Mawicke & Goisman, S.C., rather than to Judgment Debtors, until the judgment is satisfied in full.

3. That the Judgment Creditor shall and does hereby have a Charging Order against interests of each of the Debtors in the following limited liability companies (collectively, the "Companies"):

   a. Purposly, LLC;

2

Exhibit F

b.    Alpert Holdings, LLC; and

c.    Any other corporation or LLC in which either of the Debtors has an ownership interest or from which they possess or enjoy any right to income, compensation, or distribution.

4.    The Companies are hereby directed to pay to the Judgment Creditor or any receiver appointed in this action any and all profits and distributions which henceforth may be, will be, or otherwise would be or have been due (including a share of the Companies' assets upon liquidation or any return of either of the Debtors' capital in the Companies) to either of the Debtors as a result of their limited liability company interests in the Companies, or any one of them, which payments shall continue until the full amount of the Judgment, plus all accrued and accruing post-judgment interest and allowable costs and expenses are paid.

5.    Judgment Creditor may apply to this Court of an Order of foreclosure and/or judicial sale of the Debtors' limited liability company interests in the Companies should payments of profits and distributions as herein ordered by insufficient to satisfy the judgment in favor of the Judgment Creditor.

6.    Judgment Creditor shall have the right to apply to this Court for the appointment of a receiver of the Debtors' share of the profits and distributions and any other money due or to become due the Debtors with respect to the Companies and for any further Orders which may be necessary and appropriate for the purpose of carrying out this Charging Order and obtaining satisfaction of the judgment against the Debtors and in favor of the Judgment Creditor.

7.    The Companies are directed to provide a true and accurate accounting on a quarterly basis during all such times that there remains any outstanding balance with respect to

Exhibit F

the judgment against the Debtors and in favor of Judgment Creditor. Such accounting shall be submitted to the Court and Judgment Creditor.

**Dated this 19th day of June, 2017**

        **BY THE COURT:**

        Electronically signed by Maria S. Lazar

        Circuit Court Judge

_____
Circuit Court Judge/Circuit Court Commissioner/Register in Probate


_____
Title (Print or Type Name if not eSigned)


_____
Date

4

Exhibit F

STATE OF WISCONSIN     CIRCUIT COURT     WAUKESHA COUNTY

Joshua Kirley
   Plaintiff,

                                           CASE NO. 16CV589

vs.

David Alpert et al
   Defendants.

---

## DECISION AND ORDER

---

### FINDINGS OF FACT

Based upon the clear and convincing evidence adduced during the trial in this case, the Court makes the following Findings of Fact:

1. In 2012, the plaintiff, Joshua Kirley (hereinafter "Kirley") and the remaining individual defendant, David Alpert (hereinafter "Alpert") were neighbors and members of the Country Club in Miromar Lakes, Florida, a golf community.

2. Kirley was and is a sophisticated trader of stocks and other forms of investment, first through a seat on the Chicago Board of Trade and subsequently as a "day-trader" through his home in Florida.

3. Alpert appears to be a successful entrepreneur responsible for brining a variety of products to market by using his development and marketing skills along with his contacts with oversea production facilities. Although the products developed by Alpert leave the Court with the impression that they are of the "As Seen On TV" quality, it is clear to the Court that Alpert has had past success bringing big picture ideas to successful market.

4. Alpert solicited $500,000 from Kirley to buy 10% of Alpert Holdings, LLC which he represented as possessing a myriad of assets and business interests. Kirley paid this investment in $100,000 monthly installments over the 5 months between February and June of 2013.

5. In December of 2013, Alpert solicited additional sums and received a commitment from Kirley of a $1,000,000 additional investment. Between this solicitation and September, 2014, Kirley paid to Alpert Holdings LLC the amount of $800,000. The remaining $200,000 of this second commitment was never paid by Kirley.

6. As of September, 2014, Kirley invested $1,300,000 into Alpert Holdings LLC.

Exhibit G

7. In the Spring and Summer of 2014, Kirley reported that his "day-trading" activities were going poorly and that he had lost a large sums of money engaging in this activity and in a real estate investment in a libertarian community in Costa Rica. Kirley's relationship with Alpert began to sour during this period, although Kirley unsuccessfully solicited additional investors for Alpert Holdings LLC. These potential investors included friends and business acquaintances.

8. Kirley's complaints about the Alpert Holdings investment intensified into the Fall of 2014.

9. Following a back-and-forth process of complaints and accusations and at the end of June and in early July of 2015, Kirley converted his investment into a $1,300,000 loan by executing: (1) A "secured" promissory note reflecting this amount owned to Kirley by David Alpert and (2) A security agreement providing collateral to Kirley in all of David Alpert's assets, whether in existence at the time of the agreement or created after and including all accounts, commercial tort claims, consumer goods, equipment, fixtures, general intangibles, instruments, intellectual property rights, money, all personal property of any kind or description of David Alpert to secure the promissory note and (3) a personal guarantee signed by Pamela Von Haden Alpert, spouse of David Alpert, guaranteeing payment on David Alpert's $1.3 million note to Kirley.

10. The "secured" promissory note from David Alpert to Kirley reached backwards to eliminate any potential interest payment obligation from the date of original payments by Kirley until August 31, 2015. After August 31, 2015, the note accrued at 5% per annum. In exchange for this "past interest forgiveness," and as of June 30, 2015 (the date of the "secured" promissory note from David Alpert to Kirely), Kirley was recognized to own 100,000 units or 10% of an entity called GivGram LLC. GivGram LLC subsequently was renamed "Purposely LLC."

11. The evidence at trial established that although Kirley was presented with the operating agreement of GivGram LLC, he never signed it as a member. It is apparent to the Court that this decision was a purposeful one by Kirley, although the rational for the same remained illusory.

12. The "secured" promissory note from David Alpert to Kirley had a maturity date of September 30, 2015, but, within the terms of the note, David Alpert exercised his right to extend the maturity date for 90 days by an "extension payment" of $50,000. By doing this, the maturity date for this note was extended to December 29, 2015.

13. There has been no payment of principal or interest by David Alpert or Pamela Von Haden Alpert to Kirley.

2

Exhibit G

# COURT PROCEEDINGS

14. This action commenced on March 24, 2016. The amended summons and complaint stated eleven causes of action. The first 4 claims deal directly with the note, guaranty and security agreement and requests foreclosure of the note, the establishment of personal liability on the note for David Alpert (maker) and Pamela Von Haden Alpert (guarantor) and the sale of all items secured with credit going to Kirley in partial or full satisfaction of the note. Count five alleged breach of contract against David Alpert and Purposly LLC for breach of contract for alleged noncompliance with the operating agreement. Count six made claim against David Alpert and Purposly for alleged breach of fiduciary duty. Count seven made a demand for accounting of Purposly records under Sec. 183.0405, Wis. Stats.. Count eight made claims for fraud and misrepresentation against David Alpert, Purposly LLC and Alpert Holdings LLC. Count nine claimed promissory estoppel based on the allegation that David Alpert, either individually or as agent for Purposly LLC or Alpert Holdings LLC, would and could make repayment of Kirley's $1.3 million investment. Count ten claimed that David Alpert and/or Purposly LLC and/or Alpert Holdings LLC had been unjustly enriched. Count eleven alleged that the defendants falsely advertised the "purported investment viability" of Alpert Holdings LLC, the entity into which Kirley originally invested his money.

15. On January 24, 2017, the Court (by predecessor Judge Maria Lazar) entered judgment against David Alpert and Pamela Von Haden Alpert in the amount of $1.3 million, jointly and severally. The basis for this judgment was the note to Kirley and the obligations of the Alperts assumed thereunder. The judgment further ordered that all "collateral" recognized under the security agreement be sold at private auction, with public notice.

16. On June 19, 2017, without objection from any defendant and under a "charging order" issued by the Court (predecessor Judge Maria Lazar), Kirley received the rights of an assignee of any limited liability company interests, including, but not limited to, Purposly LLC, Alpert Holdings LLC or "[a]ny other corporation or LLC in which either [David Alpert or Pamela Von Haden Alpert] has an ownership interest or from which they posses or enjoy any right to income, compensation, or distribution."

17. The matter proceeded through the summer and into the fall of winter of 2017, with various claimed offenses brought before the Court for alleged discovery and other court order violations.

18. On January 8, 2018, the Court granted partial summary judgment in favor of the defendants dismissing count eleven (false advertising claim).

19. On January 11, 2018, the Court was informed that the business defendant, Purposly LLC, could not be represented by counsel. The Court had given earlier

Exhibit G

admonitions that neither of the individual defendants, who were not attorneys, could represent the interests of Purposly LLC. Because no legal representation for Purposly LLC was identified and as a sanction for discovery violations, the Court dismissed the counterclaim which had been filed on behalf of Purposly LLC by an attorney who had represented Purposly LLC earlier but who had withdrawn as counsel. Since that withdrawal of counsel, the individual defendants represented themselves.

20. On January 11, 2018, the Court found David Alpert and Pamela Von Haden Alpert in contempt of court for failing to comply with the January 24, 2017 judgment and the June 19, 2017 charging order directives. The Court granted purge conditions to the individual defendants related to full compliance with the Court's prior charging order and certification of the same. To date, this Court finds that defendants have not met the purge conditions established by the Court.

21. On March 2, 2018, following the failure of the plaintiff to file a court-ordered trial brief following two extensions of time, the Court imposed sanction on the plaintiff by dismissing all direct claims against any LLC defendants.

22. On March 5, 2018, the plaintiff filed a motion, under chapter 816, Wis. Stats., for appointment of receiver for disposal of all property (both real and personal) of David Alpert and Pamela Von Haden Alpert to satisfy the Judgment. This motion was taken under advisement and is decided in this decision and order.

23. The matter proceeded to a trial to the Court on March 5-9, 2018. Following the introduction of all evidence, the Court found that there was no adequate evidentiary support for the remaining individual claims against Pamela Von Haden Alpert and dismissed all such remaining claims against her. The earlier claim and judgment based upon her personal guarantee to the "secured" promissory note was unaffected by this ruling.

24. The parties, pursuant to the Court's direction, have filed proposed findings of fact and conclusions of law and written final arguments. Additionally, on April 26, 2018, David Alpert and Pamela Von Haden Alpert filed a request to amend their answers. This was responded to by the plaintiff Kirley on May 1, 2018 and replied to by the individual defendants on May 3, 2018. This matter is now ready for decision.

## ALPERTS MOTION TO AMEND PLEADINGS

The Alperts have again moved to amend their answer in this matter to add certain defenses to Kirley complaint. Although the Court has denied earlier requests to amend pleadings, the Court has now fully reviewed the transcripts and record of the proceedings

4

and concludes that the issue of accord and satisfaction has been explicitly or implicitly been included in the trial, that the facts surrounding this defense do not prejudice the plaintiff and that it would be in the interest of justice to permit this defense to be raised, even after the close of evidence. Section 809.02(2), Wis. Stats. provides:

> AMENDMENTS TO CONFORM TO THE EVIDENCE. If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Thus, generally under this statute, a trial is circumscribed by the issues framed in the complaint and the answers to the complaint. A defendant who fails to raise an available affirmative defense waives it. *Milwaukee County v. LIRC, 113 Wis.2d 199, 206, 335 N.W.2d 412, 416 (Ct. App. 1983); see also Oetzman v. Ahrens, 145 Wis.2d 560, 571, 427 N.W.2d 421, 426 (Ct. App. 1988).* However, if a defense is not pleaded, it may still be raised at any time, even after judgment, if the matter is before the court and is tried by express or implied consent of the parties. In such a case an amendment shall be freely allowed by the trial court "when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that" such amendment would prejudice such party. The trial court also has discretion to grant leave to amend pleadings at any stage of an action when justice so requires. *Korkow v. General Casualty Co., 117 Wis.2d 187, 197, 344 N.W.2d 108, 113 (1984).* Any injustice, unfairness or prejudice is overcome by notice to the opposing party "of the operative facts which form the basis for the claim as to enable him to prepare a defense or response." *Id.*

5

Exhibit G

At the close of evidence, while calendaring the written final arguments that the parties were to submit, this Court made the following comments:

> It was very clear from Mr. Kirley's testimony that if Mr. Alpert had paid the 1.3 million that he was done, this was done, in which case Exhibit 19, which is this note, was or may be viewed as simply being a substitute for any claim that he had, that if he had claims against Mr. Alpert or he had claims against any corporate interest that he made a choice at that moment to turn them into a loan, and that's kind of the language that's in the e-mails. So I got his answer. I understood it…
> I'm just telling you where I'm confused so you all can spend some time writing me telling me in writing why you think that I shouldn't be confused about this because if Mr. Alpert had paid the 1.3 million and your client's expectation was he was done then that's a different case than the last five days.

Trial Transcript of 3/9/2018, page 171-172. In response, the individual defendants filed the following requested finding:

> Kirley's testimony made it clear that had he been paid the $1.3 million that he was done, in which case the Note (Tr. Ex. 19) could be viewed as a substitute for any claim that he had, and that any claims Kirley might have had were turned into a loan.

Defense Proposed Finding of Fact and Conclusions of Law filed April 9, 2018 at para. 202. The plaintiff's filing makes no response to the Court's comments inquiring about the effect of creating a "substitute for any claim" by accepting the conversion of the $1.3 million investment into a "secured" promissory note, personal guarantee and security agreement.

Implied consent to an amendment of pleadings occurs where there is no objection to the introduction of evidence on an unpleaded issue. Although actual notice appears to be a key factor, the Court may find actual notice if the relevant evidence was admitted without objection and the party opposing any amendment (here the plaintiff, Kirley) understood that the evidence was aimed at the unpleaded issue. *Zobel v. Fenendael, 127 Wis. 2d 382, 387-389, 379 N.W.2d 887 (Ct. App. 1985)*. Regardless, even if no actual

Exhibit G

notice is present, a circuit court may allow an amendment of pleadings when "justice so requires." *Id. at 389-391.*

In this case, the Court finds that, despite there being no express consent, the issues related to the defense of accord and satisfaction were implicitly tried to the Court. First, included in the several answers to the plaintiff's amended complaint filed by the various defendants were defenses seeking a limit on the remedies available to the plaintiff. For example, all defendants included an election of remedies defense as an alleged bar to some or all of the claims made by Kirley. Although the defense of election of remedies and accord and satisfaction are distinct, they appear to be cut from the same cloth as neither will allow more than one route to recovery. Under the election of remedies defense, the choice of recovery is elected or chosen at the time of claim or suit. Under the accord and satisfaction defense, the remedy is chosen at the time of the substitute agreement or accord. See Answer to Amended Complaint filed by all Defendants on January 27, 2017. See also Answer of Individual Defendants to Complaint filed on June 6, 2017 at Affirmative Defenses, para. 2, 3 and 4 which specifically alleged remedy limitations based upon "David's debt to the Plaintiff." This is sufficiently similar to place the plaintiff on notice that limits on their route to recovery may be raised during the course of litigation. Second, the plaintiff in answering the counter-claim of tortious interference with contract brought by Purposly LLC expressly raised the accord and satisfaction defense. See. Kirley Answer to Counterclaim at Tenth Defense filed October 28, 2016. Lastly, the accord and satisfaction bar is based upon facts which are not in dispute. All parties recognize the creation of a "new" contractual right through the conversion of the Kirley investment into a "secured" loan. In fact, the plaintiff included

Exhibit G

the relevant documents as attachments to all complaints filed in this matter. Neither side questioned that the $1.3 million reflected in the loan documents and guaranty was the same $1.3 million originally invested by the plaintiff with David Alpert. These "operative facts" were present in this case, without dispute or objection, from beginning to end. The Court offered all sides to the opportunity provide comment to the Court's inquiry about the effect of this "substitute" agreement in their written final arguments and proposed findings of fact and conclusions of law.

Moreover, even if implicit consent could not be found to exist, the Court concludes that it is in the interest of justice to permit the amendment of pleadings. As noted, the "operative" facts are not disputed or objected to. The real question before the Court is whether, in light of "operative facts introduced at trial without dispute or objection, such facts constitute an accord and satisfaction by creating a new contract for a "secured" loan. Thus, allowing the amendment, like in *Zobel*, would simply place before the Court the underlying legal question of accord and satisfaction based upon such undisputed facts. Balancing the interests of the parties, this Court concludes that it is in the interests of justice to do so. Therefore, the Court grants the motion of the Alperts in the limited way to allow their answer to reflect the defense of accord and satisfaction.

## DECISION ON CLAIMS

The venom resulting from the business relationship between the two primary actors in this case, David Alpert and Joshua Kirley, has affected all objectivity that the parties might otherwise possess. It is clear to this Court that David Alpert has many skills. He has the distinct skill to bob and weave like a boxer when speaking of his high aspirations for product development when soliciting investment for the same. It is also

8

Exhibit G

clear from the evidence that Joshua Kirley bought into Alpert's "vision" despite his significant financial sophistication. Kirley believed that products like GivGram, etc. would appeal in a tech-hungry world and that Alpert would be able to bring it and other ideas successfully to market. From the evidence, Kirley's view really began to turn in the fall of 2014, when others that he trusted, and whom he solicited for investment into David Alpert companies, helped him focus on the fact that his investment dollars did little to promote the product development blustered by David Alpert and were used more to maintain the Alperts' luxurious lifestyle.

Despite the five days of trial related to this matter, the Court finds the above information interesting but not controlling of its ultimate decision on the claims brought by the plaintiff. From the evidence, the Court concludes that despite all of the plaintiff's likely-justifiable upset over the methods used by David Alpert to solicit and keep his money, the plaintiff chose to "pivot" his complaints by negotiating for and accepting a conversion of his $1.3 million investment into a $1.3 million loan. By doing this, the plaintiff substituted a new contractual relationship with David Alpert, et al and established an "accord and satisfaction". In turn, this created an absolute defense to his complaints arising out of his $1.3 million investment.

An accord and satisfaction is an agreement to discharge an existing disputed claim. It constitutes a defense to an action to enforce the claim. *Flambeau Products Corps. V. Honeywell Information Systems, Inc., 116 Wis. 2d 95, 110; 341 N.W. 2d 655, 663 (1984.)* The concept of the finality of accord and satisfaction has long been understood in the legal profession. *Continental Nat'l Bank v. McGeoch, 92 Wis. 2d 286, 312; 66 N.W. 606, 614 (1896).* It has been defined as a mutual yielding of opposing

9

Exhibit G

claims; the surrender of some right or claimed right in consideration of a like surrender of some counterclaim; a settlement made in some way, and, even where there is no dispute or controversy, as an accounting together in striking a balance, or agreeing upon the amount to be paid upon an unliquidated claim. *Id.* Accord and satisfaction is the substitution of another agreement between the parties in satisfaction of the former one and an execution of the latter agreement which forms a complete bar to any further action on the original claim. *Id.*

Like other contracts, an accord and satisfaction requires an offer, an acceptance, and consideration. *Flambeau Products Corp.*, 116 Wis. 2d 110; 341 N.W. 2d 663. In order for a contract of accord and satisfaction to be created, the offer of settlement must have been assented to by the accepting party. *Hoffman v. Ralston Purina Co., 86 Wis. 2d 445, 454; 273 N.W. 2d 214, 217 (1979.)* Assent does not require a mental assent or a "meeting of the minds." The question is not the actual intent of the offeree but the manifested intent. An assent or acceptance of an accord and satisfaction contract can be manifested by deed as well as by word. Actions of either party can constitute acceptance even when accompanying words express a contrary intent. Id. When the facts surrounding a settlement agreement are undisputed, the existence of whether or not such agreement constitutes an accord and satisfaction contract raises a question of law. *Go Wireless, LLC v. Maryland Casualty Company, 2013 WI App 41; 2013 WL 599761; 2013 WC App LEXIS 158 (Wis. Ct App 2013) (unpublished.).* In general, courts will not inquire into the value of the property to be received or delivered or the labor to be performed in satisfaction of a preexisting obligation, but leaves the creditor to judge for themselves, as in other transactions. It is presumed that the creditor found it for his or her

10

advantage, else he or she would not have entered into the substituted contract. Mere adequacy of consideration constitutes no ground of impeachment of a valid accord and satisfaction contract. It is enough if it appears that the creditor receives any distinct benefit from the substituted contract, which otherwise the creditor would not have had. *Potersin Incubator Co. v. Klinke, 248 Wis. 166, 172; 21 N.W. 2d 377, 380 (1946.)*.

The Court has no question that the "secured" promissory note accompanied by the personal guarantee of David Alpert's spouse and the security agreement were contacts that were signed and agreed to by the parties. They involved an offer by Alpert to resolve the complaints of Kirley as evidenced by emails from Alpert forwarding the agreements to Kirley, an acceptance by Kirley as evidenced by his signature on the agreements and consideration as evidenced by the $1.3 million and the newly recognized 10% interest in Purposly LLC which substituted for his prior investment in Alpert Holdings LLC. The conversion of Kirley's investment in the Alpert Holdings LLC, on its face, changed Kirley's position in this matter. At the conclusion of the trial and in response to questions asked by the Court, Kirley testified:

> Question: If Mr. Alpert or Ms. Alpert had paid under the note $1.3 million with interest, would this have been done?
>
> Kirley: Absolutely. There wouldn't have been interest if it was paid initially. The interest didn't start until the default.
>
> Question: I was uncertain, but I sort of threw that in there so I was taking care of all potentials. So that there would not have been any other claim made?
>
> Kirley: Absolutely nothing. Move on with my life. As I said in the e-mail to Andy Weber, I still just want to move on with my life.
>
> Question: You read the e-mail that Mr. Green presented you and it said that Mr. Alpert had agreed to change your investment to a loan.
>
> Kirley: Yes.

11

Exhibit G

Question: Okay. And that's memorialized in the note; right?

Kirley: Yes.

Question: And that would have been a loan by you of $1.3 million to him?

Kirley: Correct.

Question: Okay. And Miss Alpert sort of comes along because she signed a personal guarantee?

Kirley: Correct.

Question: But the loan, the note was with Mr. Alpert?

Kirley: They are both equal signatories or whatever to it.

Question: Okay. You may be correct, but I'll stop at that. And then there's also a security agreement that talks about certain security to guarantee payment; correct?

Kirley: Yes.

Trial Transcript from March 9, 2018 pp. 151-152. Before the execution of these documents in June and July of 2015, Kirley was no more than an unsecured investor with a bevy of possibly-legitimate complaints against David Alpert, the individual and as agent for Alpert Holdings LLC. Following the "pivot" of his interest in June and July of 2015, Kirley became a lender that had certain recognized security and the personal guaranty of another individual. Additionally, Kirley secured a different ownership interest from that in Alpert Holdings LLC with a 10% interest in Purposly LLC. It is also clear from the evidence that these documents were the result of all of the expressed animus over Kirley's unsecured investment. In short, by reaching this agreement with David Alpert, Kirley moved from an unsecured investor to a secured creditor with an investment interest in Purposly LLC. Beyond the agreement reached by the parties, the Court declines to delve into the value of the security, the personal guarantee, or the 10%

Exhibit G

ownership in Purposly LLC. While some may question the value of these items, it is clearly established that this had value to Kirley in June and July of 2015 which he hoped would allow him to "move on with his life" and, therefore, constituted an accord and satisfaction. This accord and satisfaction serves as an absolute bar to most of the claims brought by the plaintiff.[1] All remaining claims appear to be resolved by prior rulings of this Court.

## MOTION TO APPOINT RECEIVER

As noted in the findings above, On June 19, 2017, without objection from any defendant and under a "charging order" issued by the Court (predecessor Judge Maria Lazar), Kirley received the rights of an assignee of any limited liability company interests, including, but not limited to, Purposly LLC, Alpert Holdings LLC or "[a]ny other corporation or LLC in which either [David Alpert or Pamela Von Haden Alpert] has an ownership interest or from which they posses or enjoy any right to income, compensation, or distribution." Further, on January 11, 2018, the Court found David Alpert and Pamela Von Haden Alpert in contempt of court for failing to comply with the January 24, 2017 judgment and the June 19, 2017 charging order directives. The Court granted purge conditions to the individual defendants related to full compliance with the Court's prior charging order and certification of the same.

The plaintiff has asked this Court to appoint a receiver for all property of David Alpert and Pamela Von Haden Alpert. *See. Secs. 816.04 and 813.16, Wis. Stats.*

---

[1] Count seven of the Amended Complaint made a demand for accounting of Purposly records under Sec. 183.0405, Wis. Stats.. Although Arguably unaffected by the accord and satisfaction defense, it is clear that Kirley is not entitled to this remedy as it is available only to "members" of a Wisconsin LLC. Although the evidence establishes that Kirley has an ownership interest in Purposly LLC, he is not a member as he has chosen not to execute the operating agreement for Purposly LLC. Therefore, the Court dismisses this claim as well.

Exhibit G

A Court may appoint a receiver where a party establishes an apparent right to or interest in property which is the subject of the action and which is in the possession of an adverse party, and the property or its rents and profits are in danger of being lost or materially impaired. *Id.* Moreover, where, as here, a judgment has been entered, this Court may exercise its discretion to appoint a supplementary receiver to preserve property owed to a creditor. *Id; see also, Tralmer Sales and Service, Inc. v. Erickson, 186 Wis. 2d 549, 572-574, 521 N.W.2d 182 (Ct. App. 1993).*

This Court has already observed David Alpert's skill to "bob and weave" when challenged. One of the methods he uses is to set up new LLCs or business entities which carry on income-producing functions outside of the business entity under siege. For example, In July 2016, David Alpert founded Purpose Marketing Alliance, LLC (PMA, LLC). Most concerning following the Court's issuance of the charging order, PMA was paid substantial sums which this Court finds were directed to David Alpert and Pamela Von Haden Alpert in support of their lifestyle (mortgages, automobile lease, club memberships, etc). Ultimately, this Court found both individual defendants in contempt for failing to comply with the charging order requirement to turn over all property including any right or entitlement to income, compensation, or distribution from any business interest. To purge this contempt, the Court required the individual defendants to:

> i. fully comply with all provisions of the Order for Judgment, including its turnover provisions, the requirements of which include but may not be limited to turning over all Collateral (as defined in the Order for Judgment) to Plaintiff's attorneys in their possession, control, or in their name, including but not limited to all personal physical possessions and, as specified in the Order for Judgment, "money (of every jurisdiction whatsoever)" and "all other personal property of any kind or description" (including all interests and

14

Exhibit G

memberships in all LLCs and corporations) and all "Proceeds, products . . . rents, issues, profits, and returns" thereof.

ii. fully comply with all provisions of the Charging Order, the requirements of which include but are not limited to providing Plaintiff with:

> (1) "a written list, under penalty of perjury, of all their respective Wisconsin limited liability company interests;"
> (2) "a written list, under penalty of perjury, of their respective entitlement to any periodic or otherwise known distributions or profits pursuant to each of their interests since January 1, 2016 and in the future;"
> (3) "a written list, under penalty of perjury of all monetary or investment accounts of any kind in either of Judgment Debtors names or in the names any of the Wisconsin limited liability company identified in [the Charging Order], whether as a primary or other account holder;" and
> (4) "their written acknowledgment, under penalty of perjury, that all those distributions and profits will be paid directly to the Judgment Creditor, c/o their counsel Mawicke & Goisman, S.C., rather than to Judgment Debtors, until the judgment is satisfied in full."

It is clear to this Court from all of the testimony, that David Alpert has engaged in an active effort to shield his activities and income stream from the plaintiff's review despite specific orders by the Court to the contrary. Some of the business activities, including the taking of "loans" from his business entities and not disclosing other cash-flows, sometimes until the day of trial is sufficient to justify the request of the plaintiff because of the likely impairment to the plaintiff's interest as a creditor. Therefore, the Court will exercise its discretion and appoint a receiver.

## ORDER

Based upon the foregoing, the Court enters the following order:

IT IS HEREBY ORDERED THAT the defendants Motion to Amended Answer is GRANTED IN PART in so far as to add the defense of accord and satisfaction; and,

IT IS FURTHER ORDERED THAT all remaining claims brought by the plaintiff against the defendants, not previously disposed of, are hereby DISMISSED; and,

15

Exhibit G

IT IS FURTHER ORDERED THAT:

1. Attorney Seth Dizard of Milwaukee, Wisconsin is APPOINTED AS RECEIVER over all personal and real property of David Alpert or Pamela Von Haden Alpert in order to ensure compliance with the Court's charging order of June 19, 2017.
2. In his position as receiver, Attorney Dizard is to be granted a full accounting of and access to all personal and business interests of David Alpert or Pamela Von Haden Alpert and shall have the authorities ordinarily vested in a receiver. Attorney Dizard is authorized to seize and dispose of any property of David Alpert or Pamela Von Haden Alpert to insure that plaintiff Kirley receives the rights of an assignee of any limited liability company interests, including, but not limited to, Purposly LLC, Alpert Holdings LLC or "[a]ny other corporation or LLC in which either [David Alpert or Pamela Von Haden Alpert] has an ownership interest or from which they posses or enjoy any right to income, compensation, or distribution" applying any proceeds, after applied to any fees or expenses generated by the receiver, to the outstanding judgment against them entered on January 24, 2017 until satisfied.

3. Attorney Dizard shall be compensated for his work at the rate of $370 per hour and shall be paid first, from any proceeds from the sale of any property of David Alpert or Pamela Von Haden Alpert. Should there be insufficient proceeds from such sale, the plaintiff shall be responsible for the payment of any receiver cost and fees.

4. Within 14 days, the plaintiff shall file a bond in the amount of $50,000 for the fees and costs of the receiver that the plaintiff may become responsible for. Such bond amount may be revised by the Court from time to time at the request of any party, the receiver or based upon the Court's own motion.

5. Within 7 days of the filing of the bond by the plaintiff, the receiver may file any additional requested orders with the Court providing additional specificity regarding the authority and powers of the receiver, including the right to seek the Court's imposition of contempt or other sanction upon any party for disregarding this or any prior order of the Court.

Electronically signed by William J. Domina

Circuit Court Judge

07/25/2018

16

Exhibit G

FILED
01-02-2019
Clerk of Circuit Court
Waukesha County
2016CV000589

DATE SIGNED: January 2, 2019

Electronically signed by William J. Domina
Circuit Court Judge

STATE OF WISCONSIN          CIRCUIT COURT          WAUKESHA COUNTY

JOSHUA KIRLEY,

                Plaintiff,

v.                                                            Case No. 16-CV-589

DAVID ALPERT, et al.,

                Defendants.

## ORDER

      Before the Court is the Receiver's November 2, 2018 Motion to compel Defendants to reduce their expenses, or in the alternative, to turn over Purpose Marketing Alliance, LLC's income to the receiver, and for a writ of *ne exeat* restraining Defendants from leaving Wisconsin (hereinafter sometimes "the Motion"). On November 14, 2018, Defendants filed a response in opposition to the Motion (Doc. 499), and on December 7, 2018 the Receiver filed a Reply (Doc. 506). On December 10, 2018, the Court held a hearing on the Motion. After reviewing the briefs and as stated in open court, the Motion is well taken and is GRANTED IN PART and DENIED IN PART, as follows:

Exhibit H

**FINDINGS OF FACT**

1.      Based on their own admissions, the Alperts are residents of Florida (16440 Carrara Way Unit 101, Naples, Florida 34110) and not Wisconsin, and therefore, are not entitled to any exemptions for property in Wisconsin;

2.      All property of the Alperts located in Wisconsin, including by virtue of this Court's June 23, 2017 Charging Order and its July 25, 2018 Decision and Order, is within the Receiver's control and he has full authority to sell or otherwise dispose of any of the Alperts' Wisconsin property, including all real (603 N. Thornbush Circle, Hartland, Wisconsin 53029) and personal property;

3.      The Court ordered the Alperts in open court that all personal property must remain in its present location to be disposed of by the Receiver;

4.       The property within the Receiver's control also expressly includes monies received by the Alperts into Purpose Marketing Alliance, LLC ("PMA, LLC"), a Wisconsin entity wholly owned and controlled by the Alperts, which includes monies received by David Alpert through a personal services contract with Farm Journal Media ("FJM");

5.      The Receiver is directed to contact FJM to determine the contours of the agreement with FJM (including whether David Alpert is required to pay for all of his own travel expenses through the monies received) and to have all income due PMA, LLC sent directly to the Receiver;

6.      The Receiver is directed to contact any other entity that conducts business with the Alperts through PMA, LLC and determine the contours of any agreement with that entity(ies) for payment to PMA, LLC (such as monies received from Brush Art to PMA, LLC);

2

Exhibit H

7.     The Receiver will have control of the $25,000.00 received by PMA, LLC from Farm Journal Media plus monies received by PMA, LLC from any other entity, and will deduct all necessary and reasonable business expenses, along with paying David Alpert a reasonable salary, at the Receiver's discretion using his business judgment. All remaining net profits will be applied toward the judgment pursuant to this Court's June 23, 2017 Charging Order;

8.     By virtue of the previous orders of this Court and this Order, the Receiver has the express authority to receive all monies from PMA, LLC, including control over its bank account(s), and the authority to determine which funds, if any, should be allowed to flow to the Alperts, including any monies received in addition to monies from FJM;

9.     The Receiver has not been provided with all information and documents as he has requested from the Alperts and the Alperts are directed to provide all documents and information requested by the Receiver without delay or any obstruction, including contact information for FJM and any other entity from which the Alperts or PMA, LLC receive monies; and

10.     The Court admonished the Alperts that non-compliance with or obstruction of the Receiver's requests and/or attempting to remove, sell or otherwise dispose of personal property in Wisconsin will likely result in a finding of contempt by this Court, which could include sanctions, up to and including imprisonment.

Incorporating the Findings of Fact by reference, it is hereby ORDERED as follows:

i.     The Receiver's Motion is well-taken and is GRANTED IN PART.  The Alperts are ordered to immediately turn over all real and personal property to the Receiver, including all keys to their Hartland home; the Alperts are enjoined from moving any personal property, including the personal property located at 603 N. Thornbush Circle, Hartland, Wisconsin 53029; the Receiver has full control over all of the Alperts' assets located in Wisconsin, including PMA,

3

Exhibit H

LLC, and has the authority to dispose of any asset under his prerogative; the Receiver may contact FJM for information and to have all income sent directly to the Receiver; the Receiver will deduct from the FJM income all necessary and reasonable business expenses, along with paying David Alpert a reasonable salary, at the Receiver's discretion using his business judgment; the Alperts are not entitled to any Wisconsin exemptions, including the exemptions claimed in Pamela Von Haden-Alpert's Debt & Security Analysis Survey, attached as Exhibit 1 to the Supplemental Affidavit of Seth E. Dizard; and the Alperts must comply with any requests for information or documents from the Receiver.

ii.     The Receiver's Motion is DENIED IN PART.  The request for the writ of *ne exeat* is denied without prejudice.

Exhibit H